Caldwell, J.
This is a writ of error to the Supreme Court of Hamilton county. The error complained of is that the Supreme Court erred in reversing a judgment of the commercial court of Cincinnati, rendered in this cause, tried in that court, in which Heed and Brown were plaintiffs, and the insurance company was defendant. Th.e suit was brought by Reed and Brown, on a policy of insurance, against the company, for damages to a flat-boat load of whisky, insured at and from Lawrenceburg, Indiana, to New Orleans, by river. The jury found a verdict for defendant below (the insurance company) on which judgment was entered. *176 E'eed and Brown prosecuted a writ of error to the Supreme Court. The Supremo Court reversed the judgment of the commercial court, on the following ground, as stated in the record of reversal: “Because the court below, at the request of the defendants, charged the jury that if they were of the opinion, that the loss declared on by the plaintiff arose from an ordinary swell in the river, produced by the passage of an ordinary steamboat, by the flat-boat, while on her course in the river, then it was not a loss by a peril within the policy, and the plaintiff could not recover, whereas the court ought not so to have charged.” It is said, on the part of the plaintiff in error, that the Supreme Court erred in reversing the judgment of the common pleas: 1. Because the bill of exceptions did not show that the charge of the commercial court was material in the trial of the cause ; (1) *and in the second place, if material, the charge was good law. In the first place, then, does the bill of exceptions show that the charge was material upon the questions in controv'ersy between the parties? The bill of exceptions refers to the depositions of certain persons, by name, as being read in evidence; in terms those depositions are not made part of the bill of exceptions, nor does it refer to them by letter, number, or other term of designation. The depositions, however, are made a part of the record in the case; are all certified up by the clerk—the evidence appears from the record to have been before the Supreme Court without any objection. We find, then, these depositions certified -up with the record, agreeing with'the description given of them in the bill of exceptions, and are bound to consider them as the same there referred to, and as being made a part of the record ; if they are not properly made a part of the record, certified up, the plaintiffs in error should have had the record corrected in the Supreme Court. If, then, we take this evidence, the materiality of the charge becomes clearly manifest. But the charge was asked by the counsel for the plaintiff in error ; and in the absence of testimony going to show the materiality of the charge asked by them, we would suppose that it would not be treating the opinion and conduct of counsel with too much respect, to presume that what *177 they asked was material in the ease, and therefore proper to be asked, when that presumption could not injuriously affect the interest of the other party.
Besides, the charge given was directly in reference to the contract of insurance; it was a definition of the legal rights and liabilities of the parties under the policy of insurance-—a matter that could scarcely fail to bo material in the matter in controversy.
We think, therefore, we are bound to consider the charge given by the commercial court as a matter material for the consideration of the jury.
This leads us to the next and main question in the case, whether the charge of the commercial court was law. The ^charge has been substantially given above. It was, that the insurance company was not liable for the losses arising from the common and ordinary perils to which boats are necessarily exposed in navigating to New Orleans, and that if the jury were of the opinion that the loss in this case arose from an ordinary swell in the river, produced by-the passage of an ordinary steamboat, by the fiat-boat, while in her course in the river, then it was not a loss by á peril within the policy, and the plaintiff could not recover. In 1 Phillips on Insurance, 635, it is said: “Under perils of the sea, which constitute a part of the risks in almost every marine policy, are comprehended those of the winds, waves, lightning, rocks, shoals, running foul of other vessels, and, in general, all causes of loss and damage to the property insured arising from the elements, and inevitable accidents, other than those of capture and detentions.” In this case, it appears from the evidence that at the time the flat-boat sprung the leak, the steamboat John Drennan waa passing her, so close that a person could have jumped from one boat to the other; that the steamboat John Drennan, in passing out of the deep into the shoal water, made a very heavy swell ; and that when the flat-boat struck the swell, about midship, the boat cracked, as if something was breaking; that in a short time the water was coming into the boat faster than it could be pumped out, and that on examination it was found that the splicing of the gunwales had given way, etc.
Now, injury arising from the action of the waves is one of the perils insured against, and we do not see, in reason, the difference between a wave raised by the wind and one raised by a steamboat. Nor have we been able to ..find that any such distinction has ever *178 been held to exist. Nor do we think that any such discrimination as appears to bo presupposed by tho terms “ ordinary swells ” and “ ordinary steamboats ” exists. Whether the gale was a severe one, or whether it was moderate; whether it produced heavy swells, or only those that were moderately so, is not important in determining whether the insurer is liable or not; it is only necessary, to fix his liability, *that the waves should have caused the injury. Whether the steamboat was very large, or only ordinary, whether the swell was extraordinary or not, is not the question ; but the question is, did the swell cause the damage to the boat? We see no more reason in making the liability of the insurance company depend on whether the boat was an ordinary one, and the swell an ordinary one, or whether they were both extraordinary, than there would be in making its liability depend on whether the snag against which the boat run was an ordinary or extraordinary one. Now, if the steamboat had run against this boat, and run her under, there is no question but such collision would have been a peril within the policy; and wo are unable to see any difference, in principle, between running a boat under by directly striking her yntk another boat, or by running so close to her as to cause tho waves to sink or break her. The boat causing the injury would bo equally liable in the one case as in tho other, and so would the insurance company.
But it is said that the peril arising from the waves of steamboats is one of the ordinary perils to which ñat-boats are subjected, and when it is not of an extraordinary character, it is not one of the perils insured against. The time has been, within the recollection of many, when danger to a flat-boat, from the waves of a steamboat, on our waters, would have been a rare occurrence— when it would have been an extraordinary peril; but we do not suppose that the fact that the number of steamboats has so increased that it has become an ordinary peril, has altered the law of insurance.
The flat-boat, although not so highly appreciated as a means of transportation as formerly, has lost none of her legal rights; they must still be extended to her, if for no other reason, for the good she has done. Counsel for plaintiff in error have cited us to a number of authorities, in which it is said that the insurers are not liable for ordinary perils, but only for such as are of an extraordinary kind. I have been able to find no specific definition of *179 what perils are to be considered ordinary and what extraordinary, in the sense in which these terms are used in this connection. The term “ ordinary peril,” is not used as of ^similar meaning with common or frequent peril, or peril likely to be encountered ; nor does it have any relation, so far as I have been able to discover, to how great or how small the force may be that is brought to bear, or is encountered. The term, I think, is used rather in contradistinction to accident. The insurer does not become liable for inherent defects in the thing insured; he does not insure against wear and tear—such things as all vessels must necessarily be subjected to; does not insure against certain loss, but insures against accidents.
The question how great the force was that produced the injury, may be an important item of evidence, going to show seaworthiness or the reverse, or the like; but if the force produces the injury on a seaworthy vessel, the insurer is liable, if the peril belong to the class insured against, although such force may have been ever so small. The case that gives the most color to the distinction that plaintiff’s counsel have drawn between ordinary and extraordinary perils, is the case of Hazard’s Adm’r v. The New England Insurance Company, 8 Pet. 557. In that case the court say, that the policy does not cover ordinary perils, but extraordinary ones, and yet we think it falls far short of sustaining their position. In that case, the judge, on the circuit, had charged “ that if the jury should find, that in the Pacific ocean, worms ordinarily assail and enter the bottom of vessels, then the loss of a vessel destroyed by worms would not be a loss within the policy.” The Supreme Court sustained this charge. They based their decisions principally on the case of Rohl v. Parr, 1 Espinasse. Judge McLean, however, remarks in delivering the opinion of the court: “ If worms ordinarily perforate every vessel which sails in a certain sea, is not a risk of injury from them as common to every vessel which sails on that sea as the ordinary wear and decay of a vessel on other seas? The progress of the injury may be far more rapid in the one case than in the other; but do they not both arise from causes peculiar to the different seas, and which affect, in the same way, all vessels that enter into them ??? This case, I think, clearly keeps up, *and is based
on, the distinction between injuries that must necessarily occur, and accidents that may or are likely to occur. If all vessels that *180 sail in the Pacific ocean must necessarily be perforated with worms, it could not be an accident that the particular vessel in question was perforated by them.
We think the commercial court erred in their charge to the jury, and that the Supreme Court decided correctly in reversing their judgment.
The judgment of the Supremo Court will therefore be affirmed.

 See Hicks v. Pierson, 19 Ohio, 426; and see Bank of Virginia v. Bank of Chillicothe, 16 Ohio, 170; Acheson v. Sutliff, 18 Ohio, 122; and as to bills of exceptions generally, see Wilcox’s Dig. 44, and Snp. 16, and Coil v. Willis, 18 Ohio, 28; Bascom v. Parish, 18 Ohio, 268.