| 84 | 145 |
| 135 | 162 |

## Chicago, Pekin and Southwestern Railroad Co.
### *v.*
## President and Trustees of Town of Marseilles.

1. CONTRACT—*construed with reference to time of performance.* Where a railway company executed an agreement to a town which had subscribed and issued $10,000 of its interest bearing bonds to aid in the construction of the road, which bonds the company had sold, and after reciting the above facts, the agreement further recited that the company had entered into a contract for the construction of the road from a given point to another the following year, and then provided, that if, from any cause, the company should fail to construct its road, it would pay to the town the money realized on the bonds, and the accrued interest, upon tender, by the town, of the stock issued to it: *Held,* that the company, by a reasonable construction, was bound to construct the road the following year, or refund the money with interest.

2. CONSIDERATION—*surrender of stock, is good.* If a railway company, after the issue of bonds by a town, in payment of stock subscribed, gives its obligation that if it does not complete its road by a given time, it will pay the town the sum realized by sale of the bonds, with the interest thereon, upon tender of the stock issued to the town, the contract will be regarded as one for the sale and purchase of the stock, and the surrender of the stock will be a sufficient consideration for the undertaking of the company, and the recitals in the agreement of matters of inducement will form no part of the real consideration.

3. RAILWAY COMPANY—*power to purchase its stock.* A railway company may, for legitimate purposes, purchase shares of stock which it has issued to individuals or municipal corporations, and such sale is a sufficient consideration to support an agreement to pay money. See supplemental opinion on rehearing in this case, *post,* p. 643.

10—84TH ILL.

4. SALE—*of stock not affected by indorsement on contract by third party.* The indorsement on the back of an agreement for the sale and surrender of stock to a railway company on a certain contingency, by the contractor to build the road, giving his assent thereto, upon certain conditions, and agreeing to take the stock in case of its surrender, does not make him a purchaser or affect in any degree the sale to the company, and the terms of his consent will not bind the party agreeing to sell, he being no party to the contract.

APPEAL from the Circuit Court of La Salle county; the Hon. EDWIN S. LELAND, Judge, presiding.

Mr. GEORGE S. ELDRIDGE, and Messrs. RICHOLSON & SNOW, for the appellant.

Mr. CHARLES BLANCHARD, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

On the first day of August, 1871, appellant, by its president, executed an agreement, in writing, with appellee. Appellant, in the agreement, recites and acknowledges the fact, that appellee had issued bonds of the town to the amount of $10,000, bearing ten per cent interest, and payable in ten years, and had delivered the same to the company; and that the sole consideration for the issuing and delivery of the bonds was, that the company should construct and put into operation a railroad from Pekin to Chicago, through the town of Marseilles, in the State of Illinois; and that the company had sold the bonds and used the proceeds thereof in grading or partly grading a railroad from Pekin to Marseilles; and that the company had entered into a contract with Ralph Plumb, by which he had agreed to construct the same from Streator to Chicago, the following year.

The company there agrees and binds itself, that if, from any cause, it should fail to construct the road from Pekin to the town of Marseilles, it should pay to the president and trustees of the town of Marseilles, for the use of the town, the sum of money the company had received on the sale of the bonds, and the interest accrued thereon, upon the tender, by the town, of the stock issued to the town by the company.

Appellee, on the 19th of September, 1873, brought suit on this agreement, to recover the money. It was averred that the time for constructing the road had expired, but it had not been built. It was also averred that appellee had tendered a return of the stock, and had demanded the money, but the company refused to receive the stock or pay the money.

After filing a demurrer to the declaration, which was over-ruled, defendant filed several pleas. The first denied the tender. The second averred that the contract was executed without any good or valuable consideration. The third plea set up that the time for constructing the road, as agreed between the company and Plumb, had not elapsed. The fourth plea averred that the time for building the road had been extended. Issues to the country were joined on the first, third and fourth pleas, and a demurrer was filed to the second, which the court sustained. and appellant abided by its plea. A trial was had, resulting in a verdict and judgment in favor of plaintiff, and defendant appeals.

It is urged that there was no time named in the agreement for the completion of the road. The instrument states that Plumb had contracted to construct the road the following year; and as the agreement was executed in 1871, no other reasonable conclusion can be reached, than it was to be completed during the year of 1872. This is manifest from the language employed. It will bear no other construction. It then provides, that if the road should not be constructed, the company would refund the money, with interest. When constructed? Obviously within the time specified. Why name the time within which Plumb had agreed to complete it, if not to fix the time when the company would pay the money if not completed? The recital was evidently made for some purpose, and what other could have induced it? The presumption is. that the parties intended to fix a period when the tender might be made and the money demanded. We can not conclude that it was intended that the time should remain undetermined for all coming time. Rational persons and the most ordinary business men would not do so absurd a thing as that.

It seems to us, therefore, to be obvious, that a fair and reasonable interpretation of the agreement is, that if the road was not constructed according to Plumb's agreement, during the year 1872, the money should then be payable on an offer to return the stock and its being tendered to the company.

It is urged that the court below erred in sustaining the demurrer to appellant's second plea.   It averred that the instrument sued on was executed without any good or valuable consideration whatever; that plaintiff was a legally organized municipal corporation, which had voted to subscribe $10,000 to the capital stock of defendant's road, and to issue the bonds of the town to the amount of $10,000, to pay for such subscription, and that the vote was had, the subscription made, and the bonds issued in pursuance to the statute in such case made and provided; and the bonds so issued were, thereafter, and before the execution of the agreement sued on, and in pursuance of the power and authority aforesaid, delivered by the plaintiff to defendant, as a payment upon its subscription to the capital stock of the defendant, and for no other purpose, cause or consideration whatever, and that it was not a condition upon which the vote was taken, the subscription was made, the bonds were issued or delivered, that the defendant should construct or put in operation a railroad from Pekin to Chicago by way of Marseilles, or the construction or putting into operation a railroad from and to such points, by way of Marseilles, constituted no part of the consideration for the issuing of the bonds and the delivery thereof, as recited in the plaintiff's declaration; that by so subscribing to the capital stock plaintiff became a stockholder in defendant's road, and the bonds were delivered and received as a payment upon such subscription, and the plea avers that the subsequent execution and delivery, by the defendant, of the instrument in writing, to the plaintiff, was without any good or valuable consideration whatever, and which defendant had no authority to make.

The declaration, after setting out the instrument sued on, avers that the consideration for the execution of the same was

that expressed in the deed. It then becomes necessary to inquire what was the consideration thus mentioned. The agreement contains several recitals which may have and probably did operate as inducements to the making of the contract, but it is manifest that the consideration, as therein expressed, was the surrender of the shares of stock held by the town, in case the road was not completed in the time specified. What had preceded, in the way of recital, formed no part of the consideration, and it did not matter whether such recitals were true or untrue. Nor could defendant, by denying them or any of them, form a material issue. A defendant must always tender a material issue, before the plaintiff can be compelled to accept it. It was immaterial what was the consideration which induced appellee to subscribe and pay for the stock, as this was a sale of the stock by appellee, and was a purchase thereof upon the terms specified. The averments of the plea clearly fail to show a want of consideration. Appellee had the stock, which is not denied, and from the averments of the plea, appellee had paid the company in full for it. It is not averred there were any false or fraudulent representations made by appellee; and it is not denied that appellee offered to return the stock after the time for building the road had elapsed, and appellant had failed to perform. This plea presented no defense, and the demurrer was properly sustained.

Nor does the averment at the close of the plea, that the company had no power to make the contract, in anywise render it a good plea. We entertain no doubt that a railroad company may, for legitimate purposes, purchase shares of stock which have been issued to individuals. Such is believed to have been the general custom of such bodies, nor have we known the power to have been questioned. There is nothing in this plea to show that this purchase was not for legitimate purposes. If the shares issued to appellee were a consideration to support the contract for the delivery of the bonds to the company, and that they were can not be questioned, then why was not the sale of the same shares, by the

village to the company, a sufficient consideration to sustain this agreement ? We are unable to perceive any reason.

It is next urged, that the town authorities had disabled themselves from delivering the stock, by contracting to sell it to Plumb. It is claimed that the indorsements by him, on the back of the agreement, amounted to a sale to him. We think the effect of these indorsements is misconceived. The authorities of the town seem to have supposed that Plumb had some interest in the transaction, as he was a contractor for the construction of the road, and hence, they were desirous to have his assent, which he gave, on the conditions specified. He, by no means, agreed to purchase and pay for the stock, or any portion of it. Nor do we see that he bound himself to do any act, but simply consented that the company should refund the money, and he would receive the stock.

We are at a loss to see in what manner it became necessary to the force of the instrument that he should, in anywise, consent to it. He does not seem to have had any controling power over the company, or its acts or agreements. The company was bound by the contract made by its president, and we can not perceive how Plumb could control his acts. These indorsements made by Plumb, so far as we can see, were wholly nugatory, and had no effect whatever. The indorsements were no more than that of any other stranger to the agreement.

What has been said in reference to the necessity of Plumb's consent to the contract applies to his inserting the condition that it was to be on the terms that the road should be con structed within the time specified in the contract, or within such further time as should be agreed upon for its construction. It did not matter, in the slightest degree, what terms or conditions he inserted in his consent, as it in nowise affected the agreement between other parties. He was only stating what he desired and consented to, and not what the company would consent to, but he acted for himself, and not for the company.

The tender of the stock and the demand of the money were sufficiently proved. We fail to perceive any error in this record, and the judgment must be affirmed.

*Judgment affirmed.*