McIlvaine, J.
Whether the defendant corporation was bound by its executory agreement with the plaintiff to purchase shares of its own stock, under the circumstances detailed in the petition, was, undoubtedly, the question upon which the case turned in the district court.
The power of a trading corporation to traffic in its own stock, where no authority to do so is conferred upon it by the terms of its charter, has been a subject of much discussion in the courts; and the conclusions reached by different courts have been conflicting. Of course, cases, wherein the power is found to exist by express or implied grant in the charter, furnish no aid in the solution of the question before us; unless the claim of the plaintiff can be sustained, that such power was conferred on the defendant by section 63 of the corporation act of 1852 (S. & O. 301), as amended, which confers on manufacturing corporations the powers enumerated in section 3 of the act, and, among others, the power “ to acquire and convey, at pleasure, all such real and personal estate as may be necessary or convenient to carry into effect the objects of the corporation.” We think, however, that this claim cannot be maintainéd. The sole object of the defendant organization was “ for manufacturing purposes ;” and it cannot be said, in any just sense, that the power to acquire or convey its own stock was either necessary or convenient “ for manufacturing purposes.”
The doctrine that corporations, when not prohibited by their charters, may buy and sell their own stocks, is supported by a line of authorities ; and, prominent among them, may be mentioned the cases of Dupee v. Boston Water Power Co., *279 114 Mass. 37, and C. P. and S. R. R. Co. v. Marsailles, 84 Ill. 145. But nevertheless, we think the decided weight of authority both in England and in the United States, is against the existence of the power unless conferred by express grant or clear implication. The foundation principle, upon which these latter cases rest, is that a corporation possesses no powers except such as .are conferred upon it by its charter, either by express grant or necessary implication; and this principle has been frequently declared by the supreme court of this state ; and by no court more emphatically than by this court. It is tine, however, that in most jurisdictions, where the right of a corporation to traffic in its own stock has been denied, an exception to the rule has been admitted to exist, whereby a- corporation has been allowed to take its own stock in satisfaction of a debt due to it. This exception is supposed to rest on a necessity which arises in order to avoid loss; and was recognized in this state as early as Taylor v. Miami Exporting Co., 6 Ohio, 176, and has been incidentally referred to as an existing right since the adoption of our present constitution. State v. Building Association, 35 Ohio St. 258.
But, however that may be, the right of a corporation to traffic in its own stock, at pleasure, appears to us to be inconsistent with the principle of the provisions of the present constitution, article 13, section 3, which reads as follows : “ Dues from corporations shall be secured by such individual liability of stockholders, and other means, as may be prescribed by law; but, in all cases, each stockholder shall be liable, over and above the stock by him or her owned, and any amount unpaid thereon, to a further sum, at least equal in amount to such stock.” Now, it is just as plain, that a business or trading corporation cannot exist without stock and stockholders, as it is that the creditors of such corporations are entitled to the security named in the constitution. State ex rel. Att'y-Gen. v. Sherman, 22 Ohio St. 411. The corporation itself cannot be a stockholder of its own stock within the meaning of this provision of the constitution. Nobody will deny this proposition. And if a corporation can buy one share of its stock at. pleasure, why may it not buy every share ? If the right of a *280 corporation to purchase its own stock at pleasure, exists and is unlimited, where is the provision intended for the benefit of creditors? This is not the security to which the constitution invites the creditors of corporations. I am aware, that the amount of stock required to be issued is not fixed by the constitution or by statute, and also that provision is made by statute for the reduction of the capital stock of corporations; but of these matters, creditors are bound to take notice. They have a right, however, to assume that stock once issued, and not called back in the manner provided by law, remains outstanding in the hands of stockholders liable to respond to creditors to the extent of the individual liability prescribed. In this view it matters not whether the stock purchased by the corporation that issued it, becomes extinct, or is held subject to be re-issued. It is enough to know that the corporation, as purchaser of its own stock, does not afford to creditors the security intended. And surely, if the law forbids the organization of a corporation without stock, because the required security is not furnished, it cannot be, that having brought the corporation into existence, it invests it with power to assume, at pleasure, the identical character or relation to the public, that was an insurmountable objection to the giving of corporate existence in the first place.
Plaintiff in error lays much stress on the averments in the petition, that it had been the custom of the corporation that its officers and others, actively engaged in its service, should be holders of shares of its stock, and upon ceasing to be connected with the company, such persons had been accustomed to sell, and the company to buy such stock; and that the plaintiff had purchased the stock for the price of which suit was brought while in the employment of defendant.
We cannot see why these averments should take the case out of the general rule.
If it were averred that the plaintiff had purchased this stock from the defendant, or from others, under an agreement with the company that it buy the same from him when he quit its employment, or if the contract of purchase by the defendant had been executed, very different questions would arise.
*281 It is not even averred, that the plaintiff relied upon such custom either in making the purchase, or the sale, of the stock; so that, in fact, he is unaffected by the alleged custom. But if such custom had been relied on by the plaintiff when he purchased the stock, it would not- have made the executory contract of the defendant to buy the stock binding, which, without such custom, would be void. The usage of a corporation does not become the law of its existence, or the measure of its powers. The general law of the state, of which all persons are presumed to have knowledge, is the source and limit of all its powers and duties; and these cannot be varied either by usage or contract. The doctrine of estoppel has no application in the case. Nor is there any such equity in the case, as would have arisen between the parties in case the contract had been executed.

Judgment affirmed.