Owen, C. J.
I. The theory upon which the referee and the court of common pleas must have proceeded, was that the entire transaction by which Morgan acquired the furnace, and the company acquired his stock, was void; that it was beyond the power of the company to engage in the transaction, and that consequently the company acquired no title to the stock, and Morgan acquired none to the furnace property. If this conclusion is sound, the inevitable consequence is, that the company still owns the furnace, and it is assets in the hands of the assignee for the payment of the company’s debts. It is an absurdity to assume that Morgan is still the owner of both the furnace and the stock. If he is still liable to creditors as a holder of this stock, the company*, by the same reasoning, is owner of the furnace. It is conceded that the proceeding to subject the liability of stockholders to the satisfaction *6 of the claims of creditors, has throughout ignored this property. It does not appear but that this property alone would satisfy creditors, nor to what extent it would exonerate stockholders from the liability which it is now sought to subject to the satisfaction of creditors’ claims. If we were in accord with the referee and court of common pleas, upon the main proposition of the case, still it would be our duty to send the case back for proceedings to subject this property of the company to the satisfaction, pro tanto, of its debts.
II. We are of opinion, however, that the referee erred in excluding the evidence which Morgan offered, to throw light upon the transaction by which he assumed to acquire the furnace, and transfer his stock to the company.
The contention of Morgan, in this respect, is not answered by the proposition that the only purpose of offering the rejected proof was to show that the transaction was in good faith, and that this already sufficiently appeared. We have no disposition to call in question the general and well recognized principle that a corporation cannot buy its own stock. It is conceded that this principle proceeds upon a want of power, rather than upon any express prohibition in its charter. With this general principle conceded, however, the right of a corporation to take its own stock in satisfaction of a debt due to it, has long been recognized in this state.
This has been recognized as an exception supposed to rest upon the necessity of avoiding loss. Coppin v. Greenlees, 38 Ohio St. 279. It is, nevertheless, a relaxation of the general rule. It is, of course, because of the necessity of avoiding loss, and not because it is for the satisfaction of a debt, that the exception is recognized. If the same or a like necessity of avoiding loss should arise in any of the transactions of the company, it could not, with any show of reason, be contended that the application of this principle of necessity should be limited by any iron rule to the case of taking stock for an otherwise hopeless debt.
The evidence which Morgan offered, and the referee rejected, tended to establish, in substance, that Morgan had *7 traded to the company this furnace property for stock. That the furnace promised to prove a failure, or, at best, a disappointing and unsatisfactory venture. Contentions arose over the transaction, between Morgan and some of the stockholders. Many of them blamed him for having induced the company to make the purchase. Thereupon they — “many stockholders”— simply proposed a rescission of the contract of purchase; that Morgan take back the furnace and restore to the company the stock he had received for it. The company was out of debt. Nobody could possibly be hurt by a rescission of this contract which had caused so much discontent and' contention, and which promised to be a losing venture for the company and Morgan’s fellow stockholders. This proof would have established something beyond the mere good faith of the transaction. It would have tended to establish the fact that Morgan yielded to the importunities of many stockholders to rescind a bargain and set at rest an unfortunate controversy which was rapidly breeding discord among the stockholders.
The finding of the referee, that this transaction itself worked a reduction of the capital stock of the company, is not tenable. There was nothing in the way of the company re-issuing this stock or its equivalent to others who may have desired it. There was nothing in the fact that these certificates were marked <c cancelled ” on the face, by the secretary of the company, and by him treated as surrendered stock, to authorize the finding that the capital stock of the company was reduced. This was no part of the' transaction with Morgan, and there was nothing in the fact of the re-exchange of the stock for the furnace which called upon the officers of the company to treat the stock as cancelled, or the capital pro tanto reduced. Green’s Brice’s Ultra Ñires, 2d ed., 191, 192. This conclusion is not, in principle, qualified by the fact that the stock was not in fact thereafter represented. Then, we should not lose sight of the fact that there was an executed transaction. The exchange— or the re-exchange, rather — had been made, possession of the furnace taken by Morgan, and retained by him for years before the transaction was questioned by any one. To this day it has remained free from direct attack. Certainly, the pos-
*8 session by Morgan of this property which had theretofore been in the possession of the comjxany, was a circumstance proper to be considered with other facts in the case. It at least helps us to distinguish it from the case of Coppin v. Greenlees, 38 Ohio St. 275, relied upon by defendants in error. In that case it was held that: “ An executory agreement between a manufacturing corporation of this state and one of the stockholders, for the purchase of the stock of such corporation, by the former from the latter, cannot be enforced, either by action for specific performance or for damages.” That this presents a very different case from one of an executed contract is emphasized by the following language of Mcllvaixxe, J., by whom the opinion was prepared: “ If it were averred that the plaintiff had purchased this stock from the defendant, or from others, under an agreement with the company that it buy the same from him when he quit its employment,- or if the contract of purchase by the defendant had been executed, very different questions would arise.” In State v. Building Association, 35 Ohio St. 263, the general px’inciple that a corporation may xxot tx'affic iix its own stock is recognized. Yet in the same connection it is said: “Me do xxot
deny that a corporation has power to receive shares of its stock as security for a debt or other similar purposes.” 26 Ga. 28; 84 Ill. 145; 17 N. Y. 507; 114 Mass. 37; 18 Vt. 131. It is apparent from the foregoing that no inflexible rule has been recognized by this court, that a corporation may not in any case, nor for any purpose, receive its owxx stock. On the contrary, the way is left open for the application of exceptions to the general rule in proper cases. It is one of the established facts in the case that all the debts which are sought to be satisfied by this proceeding were contracted subsequently to the transaction which is assailed. The transfer of the furnace property from the possession of the company to that of Mox’gan was a fact to which persons giving credit to the coxxxpany could not safely close their eyes. The inquiry which it would naturally excite would have led to the information that the tx’ade by which the company secured the furnace, and Mox’gan the stock, had simply been rescinded and the px’operty — stock and fur *9 nace — re-exchanged. It being the law of onr state that there are exceptions to the general rule, that corporations may not deal in their own stock; all persons dealing with this company must be held to have done so in the light of this state of the law. All persons are as much presumed to know of exceptions to a principle as of the principle itself. The slightest inquiry would have revealed the fact, that, as between himself' and the company, Morgan did not sustain the relation of stockholder, at the time these debts were contracted.
In the light of this-state of adjudication in this court, we do not hesitate to say that the peculiar state of circumstances, which Morgan offered to prove before the referee, ought to have been received in evidence and considered in the light of' other facts which did appear, in order that the referee and courts could have had anmpportunity to say whether they did not bring the case within some of the well founded exceptions to the wise and well established general rule.
III. The facts alleged in the petition, concerning the insolvency, etc., of the company, were sufficient to dispense with an averment of the recovery of a judgment against it as a prerequisite to the proceeding to subject the liability of the stockholders to the satisfaction of the corporate debts.

Judgment reversed and cause remanded.

Spear, J., dissents from the second proposition of the syllabus, and the judgment of reversal.