Voorhees, J.
The plaintiff’s cause of action is ‘founded upon a contract, and he seeks to recover from the defendant, a corporation,' the amount paid by him as subscription to the capital stock of the company. The petition avers in substance, that the plaintiff agreed to buy fifty shares of the stock of the company at forty dollars per share, aggregating the sum of two thousand dollars, which was paid in full. That by the contract, the defendant agreed, as a part of the consideration for the purchase of the stock, that it (the corporation) would give him a position in said company that would pay him two dollars per day or better, and to be advanced as his abilities would warrant, and if said company failed to comply with said condition the said subscription should be null and void. That after the company was organized he demanded of the company employment under said contract, which was refused; and by reason of the company’s violation of the contract, this action is brought to recover the subscription paid by the plaintiff for the stock of the company so purchased..
To the petition a general demurrer was interposed which raises the question whether or not such a contract is legal and *122 cab be enforced, giving the plaintiff the remedy sought to be enforced in this action. The common pleas court sustained the demurrer and dismissed the petition, and the. case is in this court on petition in error.
• The contention of the plaintiff is, that the promise of the company to give him employment was a condition precedent, and by its failure to comply with the condition of the contract, which by its terms was to become null and void, a cause of action to recover back from the company his subscription accrued to him.
The controversy concerns the validity of such an agreement between a subscriber and the corporation. There are undoubtedly a class of cases where subscriptions to initiatory stock upon special terms, not prohibited by the charter and not in contravention of any clearly defined public policy, have been held valid as between the subscribers and the corporation.
The corporation having refused to execute or comply with this agreement to furnish employment to the plaintiff, does it give him the right against" the corporation to recover back his stock subscription ?
'' This raises the question whether his subscription is to be regarded as one upon a condition precedent or subsequent. Plaintiff does not aver that he subscribed upon condition that before he should be required to pay for the shares he was to secure employment. On the contrary he alleges: “That on or about the 17th day of February, 1897, the defendant and the plaintiff entered into a written contract duly delivered, by which the. plaintiff agreed to purchase fifty (50) shares of the capital stock of said company, at the agreed and authorized price of forty dollars for each share of fifty dollars, amounting to the sum of two thousand dollars, payable in installments, viz: within ten days after receiving notice from said company that 1500 shares of 2250 shares of said capital stock had been sub-' scribed for, 25 per cent, of said subscription, 30 days thereafter 10-per cent, more of said sum of two thousand dollars, in 30 days more 15 per cent, more thereof, in 30 days more 20 per cent'-additional and at the end of 30 days more, or whenever called for thereafter, 30 per cent, of the balance of said subscrip *123 tion”. * * * * “That afterwards and before the company had fully constructed or finished its plant and was ready to commence to manufacture its tubes, etc., to-wit: on and by the 5th day of October, 1897, the plaintiff paid said company and said company received the full amount of two thousand dollárs aforesaid”. He clearly contemplated that his subscription should be paid before any position or employment was or could be secured to him in the company; for the position or employment contemplated was in the company after it became a going concern, and this could not be accomplished except upon the supposition, that the capital stock, or a part at least; should be paid in and then invested in a plant to be operated by the company. When a subscription is taken distinctly upoti the condition that it is not to be binding until a stipulated thing is done, then such a subscriber does not become a stockholder, and is not entitled to the rights or charged with the burden of a stockholder, until the condition have been complied with.
Concerning conditional subscriptions, the supreme court of Tennessee, in the case of Railroad v. Parks, 2 Peck, p., 560. say: “The capital of stock companies consists of their stock subscriptions. This is the basis of credit, and an essential to organization. This is a trust fund for the benefit of credtors in. case of insolvency. Conditional subscriptions to the stock] Of corporations are unusual and often operate to defeat subscribers who become such absolutely and upon the faith that all the stock is equally bound to contribute to the hazards of tht enterprise. It misleads creditors, and is the fruitful source of litigation and disaster tending to the ensnarement of creditors and contrary to a sound public policy, conditional su]b¡* scriptions to corporate shares ought not to be encouraged.”
A condition subsequent is defined by Mr. Cook in his work on Stock and Stockholders: “A subscription on a condition Subsequent contains a contract between the corporation and a subscriber, whereby the corporation agrees to do some: act, ¿hereby combining two. contracts —one the contract of subscription, the other an ordinary contract of the corporation to perform certain specified acts. The subscription is valid and enforceable, whether the conditions are performed or not. The *124 condition subsequent, is the same as a separate collateral contract between ;the corporation and the subscriber, for breach of which an action:for damages is the remedy.” Cook on Stock and Stockholders, sec. 78.
, The principle is recognized by the supreme court in the case of Chamberlain v. Painsville & H. R. R. Co., 15 Ohio St., 225; at page 247 the court say: “The condition referred to may be either precedent; or-.subsequent. Of the former class we see no objection to the subscriber inserting such as he may choose. Until they are performed the relation of the subscriber to the company as a stockholder does not arise. But, after that relation is established, whether the non-performance of a condition subsequent, would work its dissolution is a different question. It may be that all such conditions as these last named* should be viewed, as between the corporation and the subscriber, in the light of stipulations merely, and that, in case of their non-performance, he should be left for redress to the ordinary remedies for breaches of contract.”
The provision of the contract in question, as to giving the plaintiff a position or employment in. the company when the company became operative, “that would pay him two dollars a day or better”, is to be regarded as a stipulation on the part of the company, which in accepting the subscription in the terms proposed, it undertook to perform. The plaintiff’s right to require its performance, though arising out Of the same contract as the stock for which he subscribed, does not attach to him as a stockholder, but as a contractor. And whatever might be his rights with regard to this stipulation in a controversy between him and the company in an action for damages for a breach of the contract, it does not give him the right to recover back his subscription to the capital stock of the corporation.
The vital question in such case is, whether or not a corporation can secure privileges to one stockholder who subscribe# to its stock, in giving him special terms' not to be enjoyed by-other stockholders?
“Managing agents of a corporation have only a very limited' authority to make special agreements varying the rights and duties of the several shareholders. This follows from the relationship between the shareholders and the character of their *125 contract. The subscribers for shares have agreed to associate for the purpose and upon the terms expressed in their charter! or articles of association. The rights of every subscriber in the management of the company and the distribution of its profits are equal to the rights of every shareholder in respect to every share; and: it is clearly contemplated by the subscribers that the burdens shall be distributed equally also. An argeement giving one subscriber greater privileges, or making his obligation lighter than those of the other subscribers, would be unfair to those members who had subscribed upon less favorable terms. Hence it is very difficult to imply any authority in the agents of -a company to vary the ordinary contract of membership, in any substantial particular, by assenting to a subscription upon special terms.” Morawetz on Corp., sec. 87.
In the contract set out in plaintiff’s petition there are special terms given to him which are not given to the subscribers generally. All the subscribers to the stock are not promised employment at a fixed or any price per day, binding the company to its performance, and on failure the contract to be null and void. In Henry v. Vermillion and Ashland R. R. Co., 17 Ohio, 187, it is held: “That an agreement attempting to secure any stockholder the privilege of paying up subscriptions in store goods or otherwise, except in money, will be treated as a-fraud upon stockholders, and payment in money enforced.” In Noble, Admr. v. Callender et al., 20 Ohio St., 199, it was held: “A subscriber for shares of stock in a railroad company, which is not authorized by the law to receive land in payment for its stock, cannot, in an action against the stockholders of the company, by its creditors, set up or avail himself of the benefit of a collateral agreement between himself and the company, to the effect that the amount of his subscription was to be paid in land.” In Gates, Adm’r., v. Tippecanoe Stone Co., et al., 57 Ohio St., 60, Bradbury, J., referring to the case in the 20th Ohio St., 199, supra, at page 75 says: “In this case a contract to. pay the subscription in land was contemporaneous with the subscription, and the subscription would not have been made, had it not been payable in this way, and yet* it was not allowed to prevail.”
• The general principle of. law undoubtedly is, that contracts *126 m'ade-between an incorporated company and its stockholders*when special privileges are given to the subscriber limiting his liability; or securing him privileges which are not given to the stockholders generally, are contrary to public policy and can have np effect to limit in any way their contracts of subscription/ and -the same will be treated as a fraud upon such other stockholders not consenting thereto.
lilt; is‘not claimed or averred in the petition that the other dtóckholders of defendant company knew or consented to the? conditional contract of plaintiff, whereby he was promised em«’ plpyment; nor it is alleged in the petition that the pláintiff r©» lied upon the contract as to employment in making his sufsscription. When material facts are not alleged in a petition; investing the pleading upon demurrer, they are to be assumed lijpst-strongly against the pleader. Ashbrook v. Hite, 9 Ohio St., 357, 361.
-.■The principle that an agreement between one subscriber to' thé stock of a corporation and the company, made concurrently-. with the making of the subscription, which purports to annul its obligation or materially limit and change the liability of the--.subscriber to the detriment of the company, is invalid and void;- ,is founded, says Mr. Beach, “upon the doctrine that a subscription to the stock of a corporation whose stock is open fot general subscription, is not only an undertaking between' each ’ subscriber and the company, but between him and all. Qth'et-.subscribers to the common enterprise; and that each subscriber has the right to suppose that the subscription of every, other. subscriber is a bona fide undertaking according to its' terms. . Their respective subscriptions are contributions or adr vences for a common object. The action of each in his sub-; scription may be supposed to be influenced by that of the. others, and every subscription to be based on the ground that' the.-others are what, upon their face, they purport to be.” 2¡ Beach on Private Corporations, sec. 538.
- From the allegations of plaintiff’s petition it cannot be cprestipried, under his contract of subscription and in paying for1 his-stack,, he intended to become a member of the corporation.' And of such an act Mr. Morawetz says: “If it appears that the Subscriber intended to. become a member , of.-the corporation, *127 and as such entitled to vote at meetings and otherwise enjoy the privileges of membership, it is clear that the subscription cannot be deemed a subscription upon a condition precedent.” Morawetz on Corporations, section 89.
The plaintiff’s case, .as made by his petition, is clearly distinguishable from that class of eases wherein certain conditional subscriptions have been- recognized and sustained, as in the case of Ashtabula & New Lisbon R. R. Co. v. Smith, 15 Ohio St., 328, and in Armstrong v. Karshner, 47 Ohio St., 276, 294, 295.
The petition here does not make a case of conditional sale, nor an agreement on the part of the corporation to take back the plaintiff’s stock on failure to comply' with the contract. It is not necessary therefore to decide whether a corporation can so traffic in its own stock. The contract is sought to be rendered null and void by failure to comply with a condition subsequent and not a condition precedent; and the stipulations relied upon being a condition subsequent, it does not render the whole contract void as shown by -authorities supra, and especially by Cook on Stock and Stockholders, sec. 78.
The case does not fall within the rule of Vent et al. v. Duluth Coffee & Spice Co., supreme court of Minnesota, reported in 67 Northwestern Reporter, p. 70. In that case the court' made the suggestion that a conditional subscription may be void, invalid, and the party not be a stockholder; but that he may have the right to recover back his money. The court say: ■“The plaintiff purchased from .the defendant corporation a number of shares of its capital stock, by an agreement which provided that at the end of a certain time lie could at his .option-, return the stock, and receive back the purchase price. In an action to recover such price, it was held, that the agreement is in the nature of a conditional sale, with an. option to the purchaser to revoke or rescind; and as between the plaintiff and defendant, the rights of creditors not being involved, the agreement by the defendant to receive back the stock, and pay back the price thereof, is not ultra vires.”
The court further say: “There is no express provision in its *128 articles of incorporation authorizing defendant to buy or deal in its own stock, and whether an original independent contract,, by which it agreed to purchase its own stock, would be ultra vires, we need not consider. This is not such a case. This provision of the contract constituted a material and substantial part of the consideration and inducement for the purchase of the stock by plaintiff, and, if the provision is void, it seems to us that -it vititates the whole contract, and it is a sufficient reason for the rescission of that contract and the return of the purchase price, which purchase price plaintiff is demanding. But the better opinion, it seems to us, is that which holds the original contract to he a conditional sale, with the}' option to revoke or rescind in-the purchaser.”
The doctrine of this Minnesota case is in conflict with. Coppin v. Greenlees & Ransom Co., 38 Ohio St., 275. Judge Mcllvane, at page 278, says: “The doctrine that corporations,, when not prohibited by their charters, may buy and sell their' own stock, is supported by a line of authorities; and, prominent among them, may be mentioned the cases of Dupee v. Boston Water Power Co., 114 Mass., 37, and C. P. & S. R. R. Co. v. Marseilles, 84 Ill., 145. But nevertheless, we think the decided weight of authority both in Englaud and m 1 lie United States, is against the existence of the power unless conferred by express grant or clear implication. The foundation principle, upon which these latter cases rest, is that a corporation possesses no powers except such as are conferred upon it by its-charter,1 either by express grant or necessary implication; and', this principle has been frequently declared by the supreme court of this state; and by no court more emphatically than by this: court. It is true, however, that in most jurisdictions, where the-right of a corporation to traffic in its own stock has been denied, an exception to the rule has been admitted to exist, whereby a\ corporation has been allowed to take its own stock in satisfactionof a debt due to it. This exception is supposed to rest on a necessity which arises in order to avoid loss; and was recognized in this state as early as Taylor v. Miami Exporting Co., 6 Ohio, 176, and has been incidentally referred to as am existing right since the adoption of our present constitution.. State v. Building Association, 35 Ohio St., 258.”
*129 ■In the case under consideration, believing as we do, that the' provision in the contract in relation to giving the plaintiff employment in the company, was a stipulation merely, and its performance was not a condition precedent to his becoming a stockholder, we hold, that in paying his subscription, the relation of stockholder was established between Jiim and the company, whether the corporation gave him employment or not;: and upon its failure to do so, he is left for redress to the' ordinary remedies for the breach of the contract.
This conclusion is supported by the well considered case of Morrow v. National Iron & Steel Co., 87 Tenn., 262; s. c. 10 Am. St. Rep., 658. In the syllabus the court says:
“1. A stipulation in a contract with a subscriber to the initiatory capital stock of a manufacturing corporation, organized under the general incorporation laws of the state, which provides that the subscriber shall receive, in addition to his stock share, interest-bearing bonds to an equal amount, secured by mortgage upon the company’s plant, is without consideration, and is absolutely void, both as against creditors and between the subscriber and the corporation; and the failure of the corporation to carry out such illegal stipulation does not release the subscriber from liability upon his subscription.
“2. Stipulation in contracts of subscription to organization or initiary stock of corporations to issue bonds to the subscriber to the full amount of his subscription, secured by first mortgage on the company’s plant, is not to be regarded as a condition precedent to liability upon the subscription, and is nothing more than an independent stipulation for the breach of which the remedy would be in damages, in a case where the subscriber paid part of his subscription in cash, giving notes for the balance, to be paid upon call, and having become 3 director, after organization, without receiving his bonds, and especially as the mortgage to secure the bonds could only be obtained by payment of the fund subscribed.
“3. Conditional subscriptions to stock of corporations are contrary to sound public policy, by reason of their tendency to mislead and ensnafe creditors, and they ought not therefore to be encouraged.”
We are of opinion the demurrer to the petition in this case *130 was properly sustained, and the court did no't err in dismissing the petition; the judgment of the common pleas is affirmed.
Kibler & Kibler, and Smythe & Smythe, for Plaintiff.
/. M. Swartz, for Defendant.