## FOGG *v.* BLAIR.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF MISSOURI.

No. 135.  Argued January 6, 1891. — Decided March 2, 1891.

It is the settled doctrine of this court, as well as of the Supreme Court of Missouri, that unpaid subscriptions to the stock of a corporation constitute a trust fund for the benefit of creditors, which may not be given away or disposed of by it, without consideration or fraudulently, to the prejudice of creditors.

While it is competent for a railroad corporation in Missouri, exercising good faith, to use its bonds and stock in payment for the construction of its road, it could not rightfully, at least, as against creditors or stockholders, issue its stock to contractors as full paid, without getting some fair or reasonable equivalent for it.  What is such equivalent depends primarily upon the actual value of the stock at the time it was contracted to be issued, and upon the compensation which, under all the circumstances, the contractors were equitably entitled to receive for the particular work undertaken or done by them.  The corporation could not, by its directors, sell or dispose of its assets to the prejudice of creditors and stockholders, under such circumstances, on such terms, and at such prices as indicated, upon the face of the transaction, that they were being squandered recklessly or fraudulently in disregard of the trust committed to them.

In a suit brought against contractors for the construction of a railroad to hold them liable for the face value of stock received by them, in payment for work done, the bill alleged that they got $12,000 in the company's first mortgage bonds, for each mile of constructed road, and, in addition, $850,000 in its stock, and that the mortgage bonds received by them were full and adequate compensation for the work; but there was no allegation as to the real value of the stock.  *Held,* that the bill was bad on demurrer; that it should have shown that the stock was of some value; and that the general allegations that the arrangement was a "fraud," a "breach of trust," a "scheme," and "colorable," without stating the ultimate facts upon which they were based, were only allegations of conclusions of law, which the demurrer to the bill did not admit.

THE court stated the case as follows:

The appellant Fogg brought this suit to recover from the appellee Blair the amount of a judgment obtained by him

against an insolvent railroad corporation. The general ground upon which it is sought to make the appellee liable is, that he holds stock of that corporation upon which he is alleged to owe more than is sufficient to discharge appellant's judgment against it.

The case was determined upon demurrer to the bill, which makes the following showing: The St. Louis and Keokuk Railroad Company, a corporation of Missouri created by an act approved February 1ᵥ, 1857, was authorized to construct a railroad from some suitable point on the North Missouri Railroad, not exceeding thirty miles west of St. Charles in that State, by way of Louisiana, Hannibal, La Grange and Canton, to some point near the mouth of the Des Moines River on the northern boundary of Missouri. Between January 1, 1867, and May 1, 1880, it located its line between Gilmore about nineteen miles west of St. Charles and Alexandria at the mouth of that river, running in a northerly direction through St. Charles County to Lincoln County by the way of Troy to a point near Prairieville, a distance of thirty-eight miles. It was also located from the Fair Grounds near Hannibal by the way of New London to Frankfort in Pike County. The road between the two places last named, a distance of eighteen miles, was completed and a large amount of grading was done in Lincoln County on the line located. The sum of $300,000 was expended in grading in that county. In the progress of the work the company became indebted in large amounts to a considerable number of persons, the plaintiff Fogg among the number.

On the 22d of September, 1870, Fogg and the railroad company had a final settlement of their respective claims, showing due him the sum of $9547.75 for labor done and money furnished in the location and construction of the railroad.

Subsequently, June 3, 1872, nearly all of the stockholders and directors, and all of the executive officers, of the St. Louis and Keokuk Railroad Company entered into articles of association, and organized under the General Statutes of Missouri a new corporation named the St. Louis, Hannibal and Keokuk Railroad Company, with a capital stock of $6,000,000 divided

into 60,000 shares of $100 each, for the purpose of building a railroad between the points named in the charter of the St. Louis and Keokuk Railroad Company, and over most of the same ground upon which the latter company located and graded its road as above stated.

On the 3d of March, 1873, the St. Louis and Keokuk Railroad Company, by deed, assigned and transferred to the St. Louis, Hannibal and Keokuk Railroad Company its entire line of railroad, completed as well as unfinished, together with all its property of every kind and nature, without paying the plaintiff's debt or said other debts, and by such assignment and transfer rendered itself incapable of doing so. But in such deed it expressly stipulated and required the St. Louis, Hannibal and Keokuk Railroad Company to assume the said debts, including the plaintiff's, and the latter company did expressly assume and agree with the other company to pay the above debts of plaintiff and others. The St. Louis, Hannibal and Keokuk Railroad Company took possession of the railroad and all the property so assigned and transferred to it, and there was no other consideration for the assignment and transfer than its assumption of the above debts.

In an action at law brought by the plaintiff, September 22, 1880, in the court below, against the two companies, it was held that he could not recover against the St. Louis, Hannibal and Keokuk Railroad Company the amount of his claim. Thereupon that action was dismissed as to that company; and at a second trial the plaintiff obtained judgment against the St. Louis and Keokuk Railroad Company for $16,496.06 and costs, upon which execution was issued and returned no property found. Afterwards, on the 5th of May, 1884, in a suit in equity in the court below, the plaintiff recovered a judgment against both companies for the full amount of his judgment, with interest and costs.

On the 24th of February, 1881, the defendant Blair, a citizen of New Jersey, and Moses Taylor entered into a written contract with the St. Louis, Hannibal and Keokuk Railroad Company for the grading of its road, or so much thereof as remained ungraded between the south line of Pike County near Prairie-

ville, and some point on the Wabash, St. Louis and Pacific Railroad between Wentzville and Peruque, for the building of bridges thereon, and for furnishing therefor all the materials, including the ties and rails, for the tracks of the road; the work to be completed and finished on or before the 31st of December, 1881, and to be equal in construction and materials to the part of the road then completed. In consideration of the work so to be done the company covenanted and agreed to pay and deliver to Blair and Taylor first mortgage bonds of the company equal to the sum of $12,000 for each mile of constructed road, and $850,000 par value of the capital stock of the company, in full payment for the construction of said part of its road.

In pursuance of that contract, Blair and Taylor constructed and completed such part of the road on or about July 15, 1882, making connection with the Wabash, St. Louis and Pacific Railroad, at Gilmore, a length of thirty-eight miles of main track and two miles of side track, receiving from the railroad company its first mortgage bonds to the amount of $480,000 (equal to $12,000 per mile of main and side tracks) and a certificate, each, for 4250 shares of its full paid stock of the par value of $425,000. It is alleged in the bill that the work done by them "was not worth more than $12,000 per mile;" that the first mortgage bonds delivered to them constituted "a full and adequate consideration for all the work done on said part of said railroad by said Blair and Taylor under said contract;" that the issuing and delivery "of said certificates for said 4250 full paid shares each in the capital stock of said St. Louis, Hannibal and Keokuk Railroad Company to said Blair and Taylor, as aforesaid, was without any valuable consideration paid or moving from said Blair and Taylor or either of them to said railroad company, and there was no consideration for said stock and the agreement on the part of said St. Louis, Hannibal and Keokuk Railroad Company;" that "the agreement on the part of the said St. Louis, Hannibal and Keokuk Railroad Company to issue and deliver to said Blair and Taylor shares in its capital stock to the amount of $850,000, pretendingly in part payment for the completion of said part of said

railroad between the south line of Pike County, Missouri, near Prairieville in said county, and Gilmore on the Wabash, St. Louis and Pacific Railroad, as aforesaid, was only colorable and was a scheme on the part of said Blair and Taylor to get said stock without paying therefor, and it was a fraud upon your orator and other creditors of said St. Louis, Hannibal and Keokuk Railroad Company," and "the making of said contract and issue and delivery by the directors and officers of the St. Louis, Hannibal and Keokuk Railroad Company of said certificates for said 4250 shares each of full-paid stock in the capital stock of said company to said Blair and Taylor without receiving the par value thereof either in money or work was a breach of trust, of which said Blair and Taylor had full knowledge and notice;" that "the said stock in the hands of said Blair and Taylor was and is null and void as against your orator and other creditors of said St. Louis, Hannibal and Keokuk Railroad Company;" and that by reason of the premises Blair still owes that company the sum of $425,000 for the 4250 shares of its stock delivered to him as aforesaid.

It further appears from the bill that in a suit to foreclose a deed of trust executed August 1, 1877, by the St. Louis, Hannibal and Keokuk Railroad Company to secure the payment of certain bonds, in which suit the present plaintiff was a defendant, the railroad and all the property appurtenant thereto were sold and purchased by John I. Blair for the sum of $370,000, which amount was not sufficient to pay the bonds secured by the deed of trust. In that suit Fogg's judgment, then amounting to $18,365.11 and costs, was adjudged to be junior and inferior to the lien of the deed of trust. 25 Fed. Rep. 684; 27 Fed. Rep. 176; *Fogg* v. *Blair*, 133 U. S. 534.

The St. Louis and Keokuk Railroad Company and the St. Louis, Hannibal and Keokuk Railroad Company are both insolvent. The latter company has no officers and keeps no office; and the foreclosure and sale of its property has practically dissolved it as a corporation; and John I. Blair is the only stockholder of that company whose stock is known to the plaintiff to be unpaid, and who is within the jurisdiction of the court below.

The plaintiff, proceeding in his present bill on the ground that the stock of the St. Louis, Hannibal and Keokuk Railroad Company is a trust fund for the payment of its debts, prays that the certificate to Blair of 4250 shares of full-paid stock be cancelled, and that he be decreed to pay to the plaintiff the full amount of his decree against that company, and also the full amount of the judgment, interest and costs, of such other unsatisfied judgment creditors of that company as shall come in and contribute to the expenses of this suit in proportion to their respective demands; and that the plaintiff and other unsatisfied judgment creditors of the St. Louis, Hannibal and Keokuk Railroad Company have such relief as may be equitable.

*Mr. James Carr* for appellant.

The capital stock of a corporation is a trust fund for the payment of its creditors. *Sawyer* v. *Hoag*, 17 Wall. 610; *Upton* v. *Tribilcock*, 91 U. S. 45; *Sawyer* v. *Upton, Assignee*, 91 U. S. 56; *County of Morgan* v. *Allen*, 103 U. S. 498; *Jackson* v. *Traer*, 64 Iowa, 469. The directors of a corporation are trustees of its capital stock, with all the duties and obligations of trustees resting on them; and in the management of capital stock they are bound to exercise sound judgment, integrity and good faith in disposing of it. *Jackson* v. *Ludeling*, 21 Wall. 616; *Upton* v. *Tribilcock*, 91 U. S. 45; *Bouton* v. *Dement*, 123 Illinois, 142.

Capital stock, being a trust fund, may be followed by creditors in a court of equity, into the hands of every person who is not a *bona fide* purchaser thereof for value without notice, and such persons held as trustees to the extent of the trust fund in their hands. *Sanger* v. *Upton*, 91 U. S. 56; *Wood* v. *Dummer*, 3 Mason, 308, 312; *Curran* v. *Arkansas*, 15 How. 304; *Taylor* v. *Bowker*, 111 U. S. 110. John I. Blair and Moses Taylor were the original takers of the stock in question. Hence the doctrine of *bona fide* purchaser for value without notice does not apply to the facts of this case.

Parties contracting with a corporation are bound to take

notice of its capacity to contract. *Davis* v. *Old Colony Railroad*, 131 Mass. 258. Neither is a simulated payment of stock valid as against creditors. *Sawyer* v. *Hoag*, 17 Wall. 610; *Wetherbee* v. *Baker*, 35 N. J. Eq. 501.

The directors of a corporation have no power to release a subscriber to its capital stock to the prejudice of its creditors. *Burke* v. *Smith*, 16 Wall. 390; *Rider* v. *Morrison*, 54 Maryland, 429; *Bedford Railroad Co.* v. *Bowser*, 48 Penn. St. 29, 37.

An agreement between a corporation and its stockholders that the stock shall be considered full paid and non-assessable upon the payment of a certain per cent of its par value is binding on the corporation and estops it from making any further calls on the stockholders. But if the corporation shall become insolvent, such agreement does not estop unsatisfied judgment creditors of the corporation from subjecting the unpaid balance on the stock to the payment of their judgments. *Upton, Assignee* v. *Tribilcock*, 91 U. S. 45; *Sanger* v. *Upton*, 91 U. S. 56; *Hawley* v. *Upton*, 102 U. S. 314; *Scovill* v. *Thayer*, 105 U. S. 143.

A sale of a railroad far below its value under a foreclosure decree obtained by virtue of a collusive agreement between the directors of the company seeking to escape liability as indorsers therefor, and the purchasers, is not binding on the creditors, and such sale will be set aside and held for naught and the purchasers held as trustees for the creditors of the company for the full value of the property, less the sum which the purchasers actually paid for a large lien claim and not for the nominal amount, they having bought it at a large discount. *Drury* v. *Cross*, 7 Wall. 299; *Jackson* v. *Ludeling*, 21 Wall. 616.

It may be conceded for the purposes of this case, that the stock in question could be paid for in work; but when the rights of creditors intervene, the payment can only be made in work at a reasonable price. The stockholder is not legally entitled to a credit of $1000 on his stock when he only does $500 worth of work. And as contracts to pay for stock in work are frequently made to get the stock for nothing, or at

least without paying par value therefor, and thereby cover up a fraud on *bona fide* stockholders and creditors of the corporation, they should be scrutinized by the courts with great care. *Jackson* v. *Traer,* 64 Iowa, 469; *Chouteau* v. *Dean,* 7 Missouri App. 210; *Moss* v. *King,* 42 Iowa, 478; *Boynton* v. *Hatch,* 47 N. Y. 225.

*Mr. Walter C. Larned* for appellee.

Mr. Justice Harlan, after stating the case, delivered the opinion of the court.

It is the settled doctrine of this court, as well as of the Supreme Court of Missouri, that unpaid subscriptions to the stock of a corporation constitute a trust fund for the benefit of its creditors, which may not be given away or disposed of by it, without consideration or fraudulently, to the prejudice of such creditors. *New Albany* v. *Burke,* 11 Wall. 96, 106; *Sawyer* v. *Hoag,* 17 Wall. 610, 620; *Upton, Assignee* v. *Tribilcock,* 91 U. S. 45; *Sanger* v. *Upton, Assignee,* 91 U. S. 56; *Webster* v. *Upton, Assignee,* 91 U. S. 65; *County of Morgan* v. *Allen,* 103 U. S. 498, 509; *Scovill* v. *Thayer,* 105 U. S. 143, 154; *Hawkins* v. *Glenn,* 131 U. S. 319, 335; *Richardson* v. *Green,* 133 U. S. 30, 45; *Peters* v. *Bain,* 133 U. S. 670, 691; *Clark* v. *Bever, ante,* 96; *Liebke* v. *Knapp,* 79 Missouri, 22, 24. And this principle of general law is reinforced in Missouri — where the transaction in question occurred, and by whose laws the railroad corporations mentioned in the bill were created — by a statute giving a judgment creditor of a corporation, where corporate property cannot be found upon which to levy his execution, the right to an execution against a stockholder "to the extent of the amount of the unpaid balance of such stock by him or her owned." 1 Rev. Stats. Missouri, 1879, p. 121, c. 21, § 736; Ib. 1889, § 2517.

While it was competent for the St. Louis, Hannibal and Keokuk Railroad Company, exercising good faith, to use its bonds and stock in payment for the construction of its road, it could not rightfully, at least as against creditors or stock-

holders, issue its stock to Blair and Taylor as full paid without getting some fair or reasonable equivalent for it. What was such an equivalent depends primarily upon the actual value of the stock at the time it was contracted to be issued, and upon the compensation which, under all the circumstances, the contractors were equitably entitled to receive for the particular work undertaken or done by them. The principles which, by established law, govern the relations between a corporation and its creditors and stockholders, and the management of the corporate property, would be of little value, if the corporation, by its directors, could sell or dispose of its assets to the prejudice of creditors and stockholders under such circumstances, on such terms and at such prices as indicated, upon the face of the transaction, that they were being squandered recklessly or fraudulently in disregard of the trust committed to them. For such violations of trust the courts furnish ample remedy, independently of any statute prescribing a special mode for enforcing the liability of stockholders for the balance due upon stock held by them purporting to be, but which is not, full paid. Is the plaintiff entitled to relief under any proper application of these principles?

It is averred in the bill, and the demurrer admitted, for the purposes of the hearing below, that full and adequate compensation for the work done by Blair and Taylor was $12,000 per mile in the company's first mortgage bonds. Assuming this to be true, if the stock issued to Blair and Taylor was of any considerable value at the time they received it, or if the circumstances attending its delivery to them indicated bad faith upon their part or upon the part of the corporation, different questions would arise from those now presented. But the bill contains no allegation whatever as to the real or market value of the stock. The court cannot say, from any facts set forth in the bill as to the condition of the railroads in question that the stock when delivered to the contractors was worth par, or that it had any substantial value. If, when disposed of by the railroad company, it was without value, no wrong was done to creditors by the contract made with Blair and Taylor. If the plaintiff expected to recover in this suit

upon the ground that the stock was of substantial value, it was incumbent upon him to distinctly allege facts that would enable the court — assuming such facts to be true — to say that the contract between the railroad company and the contractors was one which, in the interest of creditors, ought to be closely scrutinized. He seems to have carefully avoided making any allegation as to the real or probable value of the stock, and to have supposed that the court, in the absence of averment or proof to the contrary, would assume that it was worth par, or had substantial value. As he impugned the good faith of the transaction between the company and the contractors, it was incumbent upon him to state the essential, ultimate facts upon which his cause of action rested, and not content himself with charging, generally, that what was done was "colorable," a "fraud," "a breach of trust," and a "scheme" by which Blair and Taylor were to get the stock without paying for it. These are allegations of legal conclusions merely, which a demurrer does not admit. *Dillon* v. *Barnard*, 21 Wall. 430, 437; *United States* v. *Ames*, 99 U. S. 35, 45; *Pullman Palace Car Co.* v. *Missouri Pacific Railway*, 115 U. S. 587, 596; *Ford* v. *Peering*, 1 Ves. Jun. 72, 77. It is consistent with the allegations of the bill that the stock was absolutely without value when issued to Blair and up to the time when the railroad and all the property appurtenant thereto was sold under the decree of foreclosure. The demurrer was properly sustained.

*Decree affirmed.*