INGRAHAM v. COMMERCIAL LEAD CO. et al. †

(Circuit Court of Appeals, Eighth Circuit. February 24, 1910.)

No. 3,115.

**1.** Corporations (§ 232*)—Liability of Stockholders—Sufficiency of Payment for Stock.

A corporation, which is a going concern, but has become in fact insolvent, and is without credit, and its stock of no value, may lawfully in good faith issue new stock to its old stockholders as a bonus for loans made it to pay its debts and enable it to resume business, and in case it fails such stockholders cannot be called on by creditors to pay par value for such stock, as if they had subscribed to the original stock of the company.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 883; Dec. Dig. § 232.*]

**2.** Corporations (§ 232*)—Liability of Stockholders—Sufficiency of Payment for Stock.

A corporation, which was lessee of a valuable mine, became insolvent, owing at the time $18,000 rental, which was past due. In the belief that the lease was of great value, and that they would be able to extricate the company from its difficulties if they could retain it, the officers and stockholders in good faith made a settlement with the lessor, by which they issued to it $4,500 par value of new stock in consideration of its waiver of forfeiture of the lease and a year's extension of one-half the rent due. *Held* that, it not appearing that the waiver and extension were not a full and fair equivalent for the stock received, the lessor could not be held liable at suit of other creditors of the lessee for the par value of such stock.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 883; Dec Dig. § 232.*]

**3.** Corporations (§ 232*)—Stockholders—Who are Stockholders.

A creditor of an insolvent corporation, to whom on a settlement the company, in addition to giving its note for the debt, issued new stock as a bonus, but who refused to accept it, and returned it to the company, is not liable for its par value, in the absence of any showing of bad faith.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 232.*]

Appeal from the Circuit Court of the United States for the Eastern District of Missouri.

Suit in equity by William S. Ingraham, doing business as the Illinois Fuel Company, against the Commercial Lead Company and others. Decree for defendants, and complainant appeals. Affirmed.

Fred Armstrong (W. B. Thompson and Ford W. Thompson, on the brief), for appellant.

Daniel N. Kirby and Bernard Greensfelder (W. F. Carter, Charles C. Collins, S. L. Swarts, Lee Sale, M. F. Watts, and Willi Brown, on the brief), for appellees.

Before SANBORN and ADAMS, Circuit Judges, and RINER, District Judge.

ADAMS, Circuit Judge. This was a bill by a judgment creditor of the Commercial Lead Company, a corporation, to collect his judgment from stockholders alleged not to have paid for the stock held by them. Two common defenses were made by all the defendants,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
† Rehearing denied April 27, 1910.

except the Columbia Lead Company and E. A. Rozier. The first consists of a denial that their stock was not fully paid, and the second of an averment that the corporation owes them more than any possible stock liability on their part. The Circuit Court, after a hearing on the merits, dismissed the bill, and complainant appeals.

These are the facts: The corporation was organized in 1903 as a manufacturing and business company under the provisions of chapter 12, art. 9, of the Revised Statutes of Missouri of 1899 (pages 1064-1082, Ann. St. 1906), to carry on the business of lead mining. Its capital was $60,000, divided into 6,000 full-paid shares of $10 each. Its principal asset consisted of a lease of a valuable lead mine located in St. Francois county, Mo. The expectation of the stockholders was that the capital would be sufficient to do all necessary development work and put the company upon a paying and profitable basis; but a protracted strike of the miners, the flooding of the mine, and the cost of development work soon exhausted the original capital and discouraged the stockholders. They had incurred debts amounting to $60,000 or $65,000. They had tried to borrow money, but could not do so on the credit of the corporation. They had tried to sell their leasehold, pay their debts, and quit business, but found it impossible to do so. They then took the requisite steps under the law of Missouri to increase their capital from $60,000 to $100,000, and attempted to sell the increased issue of capital stock, but had failed in doing that. Inspired by great confidence in the ultimate outcome of their venture, they then adopted a plan of raising $75,000 by loaning that amount, in sums proportionate to the amount of the original stock held by each stockholder, to the company. As an inducement and part consideration for making these loans the stockholders were to receive 50 per cent. of the amount loaned by them in the increased stock of the company. Competent mining experts had assured them that by raising that amount of money they would have enough to pay off existing debts and $10,000 or $15,000 more, and that by judiciously using this excess the mine could be put upon a paying basis within 60 days. Conforming to this plan, the defendants, who were originally interested in the company either as directors or stockholders, and some few others, made loans to the company, receiving its promissory notes, bearing interest at 7 per cent. per annum, for the amount loaned by them, respectively, and also the percentage of stock agreed upon as a bonus. In this way $69,500 was secured. The remaining $5,500 could not be obtained without a greater bonus, and the same, by consent of the parties interested, was given.

This money was consumed in paying the old debts and in an attempt to resume mining operations. The result proved a failure. The defendants lost all the money loaned by them, and a few new creditors, like the complainant, have not yet collected their debts. The proof shows that the enterprise was originally undertaken in good faith for the purpose of organizing a business, but, like many other most promising mining ventures, proved disastrous; that afterwards an honest effort was made to resuscitate the company, by increasing its capital and making use of the stock in good faith to accomplish

that purpose. No stock-jobbing or speculating scheme was ever intended or practiced. The original capital had become so impaired that the stock representing it was valueless, and the new stock in the nature of the case could not be sold on the market for its face value. No independent investors would buy $40,000 work of new stock, when $60,000 of worthless old stock was to share in its benefits proportionately. Whether we view the transaction in the light of the prevailing conditions at the time the loans were made by the defendants, or in the light of the subsequent actual developments, we cannot doubt that the $75,000 loan to the corporation by the defendants was the full equivalent of the actual value of the notes and stock of the company received by them. The transaction, consisting nominally of loaning the money and taking the notes and increased stock of the company, was in reality the payment of $75,000 to the company for $40,000 of its increased stock and the promise (of doubtful value) of repayment by a company which then had no actual credit or financial standing.

The facts involved in the case of Handley v. Stutz, 139 U. S. 417, 11 Sup. Ct. 534, 535 (35 L. Ed. 227), were substantially like those in this. Mr. Justice Brown, there speaking for the court, said:

"The case then resolves itself into the question whether an active corporation, or as it is called in some cases, a 'going concern,' finding its original capital impaired by loss or misfortune, may not, for the purpose of recuperating itself and providing new conditions for the successful prosecution of its business, issue new stock, put it upon the market, and sell it for the best price that can be obtained. * * * To say that a corporation may not, under the circumstances above indicated, put its stock upon the market and sell it to the highest bidder, is practically to declare that a corporation can never increase its capital by a sale of shares, if the original stock has fallen below par. * * * So long as the transaction is bona fide, and not a mere cover for 'watering' the stock, and the consideration obtained represents the actual value of such stock, the courts have shown no disposition to disturb it. * * * As the company in this case found it impossible to negotiate its bonds at par without the stock, and as the stock was issued for the purpose of enhancing the value of the bonds, and was taken by the subscribers to the bonds at a price fairly representing the value of both stock and bonds, we think the transaction should be sustained, and that the defendants cannot be called upon to respond for the par value of such stock, as if they had subscribed to the original stock of the company."

The effort of learned counsel for complainant to distinguish between Handley v. Stutz and the case now under consideration, on the ground that the former did not involve the application of the laws of Missouri, is not satisfactory to us. In the case of Fogg v. Blair, 139 U. S. 118, 11 Sup. Ct. 476, 35 L. Ed. 104, which was before the Supreme Court at the same time it was considering Handley v. Stutz, a judgment creditor of an insolvent corporation, organized and doing business under the laws of the state of Missouri, sought to hold a stockholder liable for unpaid portions of stock held by him. It was there urged and conceded that capital stock of a corporation was a trust fund for the benefit of creditors, and the laws of Missouri and the decisions of the Supreme Court of that state on the subject were under consideration. In view of them all, conclusions were reached to the effect that, in determining whether stock is full-paid

or not, regard should be had to the actual value of the stock at the time it was issued and to the circumstances attending its disposition. It was said, among other things:

"If, when disposed of by the railroad company, it was without value, no wrong was done to creditors. * * *"

This contemporaneous utterance of the Supreme Court, in a case involving the laws now under consideration, compels us to hold that the doctrine of Handley v. Stutz was intended, in the absence of statutes affirmatively compelling different conclusions, to be of general application, and that it controls us in the disposition of the present case.

Our conclusion is that the corporation received the fair and reasonable value in money for the increased stock issued to some of the defendants as bonuses for their loans, and that the learned trial court committed no error in deciding in their favor.

The liability of the Columbia Lead Company depends upon some other and different considerations. That company was the lessor of the mine which the Commercial Company undertook to operate. The proof shows that it was a mine of great value. The fee was sold in 1907, after this suit was instituted and before it was tried, for $690,-000. The annual rental reserved by the lessor was $36,000, payable in semiannual installments of $18,000 each. On December 18, 1903, at a time when the officers and stockholders confidently believed they could extricate their company from its financial embarrassment and were willing to hazard their own money in an attempt to do so, the right had accrued to the lessor to forfeit the lease for nonpayment of an installment of $18,000 rent, which fell due December 15, 1903. The lessor and the lessee met and negotiated a settlement, by which, in consideration of 450 shares of the increased capital stock of the lessee company, the right of forfeiture was waived and the time for paying $9,000 of the installment then due was extended for one year. This agreement was undoubtedly made in good faith, at a time when the lessee company, its officers, and stockholders verily believed the lease was of great value. They exhibited their faith by loaning $75,-000 to the lessee company, secured only by their confidence in the enterprise, and at a time when all would be lost if the forfeiture could not be averted.

In view of these facts we are of opinion that the waiver of the forfeiture and an extension of time for paying the rent constituted the full and fair equivalent of the face value of 450 shares of the increased stock issued to the lessor. For the purpose of this case, however, it is sufficient that it does not appear from the proof that the waiver of the forfeiture and extension of time was not the full and fair equivalent of the value of the stock. Payment for capital stock need not be made in money alone, but may consist of valuable rights conferred by contract, which, in the situation of a corporation at the time, actually represents the fair and needed equivalent for the money. Liebke v. Knapp, 79 Mo. 22, 49 Am. Rep. 212; Van Cleve v. Berkey, 143 Mo. 109, 44 S. W. 743, 42 L. R. A. 593.

No error was committed in dismissing the bill so far as the Columbia Lead Company was concerned.

Still other facts affect the disposition of the case against defendant E. A. Rozier. He was an attorney to whom the Commercial Company owed $150 for legal services rendered. In settlement of that obligation it gave him its promissory note for the amount and issued to him seven shares of its increased stock. With clearer vision, perhaps, than other defendants of the intrinsic value of the stock, he refused to accept it and returned it to the company. There is no showing that his return of the stock was for the purpose of evading a legal liability once incurred by him.

For these reasons, as well as those advanced for exonerating the other defendants from liability, we perceive no error in dismissing the bill as to defendant Rozier.

The conclusions already expressed obviate the necessity of discussing other interesting questions of law and practice which were ably presented in argument and brief.

The decree of the Circuit Court is affirmed.

NOTE.—The following is the opinion of Dyer, District Judge, in the court below:

DYER, District Judge. The complainant filed on the 6th day of April, 1906, a bill of complaint in equity by which it seeks to recover of certain alleged stockholders in the Commercial Lead Company an amount alleged to be due for certain stock issued to the defendants named in the bill, which it is alleged was not paid for. The complainant has a judgment against the defendant corporation for a large sum of money, and, failing to realize anything on an execution issued upon that judgment against the corporation, now seeks to recover of certain stockholders for certain stock alleged to be unpaid. Each of the defendants make answer to the bill of complaint, and therein allege substantially the same defenses.

The bill in substance charges that on the 29th of May, 1905, the complainant recovered judgment for the sum of $2,317.13 and costs against the defendant the Commercial Lead Company; that the said judgment was final and remains unappealed from, unreversed, unpaid, and in full force; that the Commercial Lead Company, ever since the rendition of said judgment against it, has been hopelessly insolvent, and owns and holds no property or assets out of which the said judgment could be paid. The bill then states that an execution was issued on the judgment on the 14th of October, 1905, and returned nulla bona. The bill then proceeds to charge that the Commercial Lead Company was organized under the laws of the state of Missouri in June, 1903, with a capital stock of $60,000, divided into 6,000 shares, of the par value of $10 each; that in August, 1903, said company voted for an increase of the capital stock from $60,000 to $100,000; that said increased stock consisted of 4,000 shares, of the par value of $10 per share, but that said increase was duly authorized at a meeting of stockholders and a certificate therefor duly issued by the Secretary of State; that no part of the par value of said shares of stock, amounting to $40,000, was paid by any of the stockholders of said company, either in money or in property of any kind, nor has there ever been transferred, conveyed, or delivered to said defendant company, in lieu of money, any property whatsoever for the said $40,000 of its capital stock; and that there is now due, and always has been due, and unpaid to said Commercial Lead Company on each and every share of said 4,000 shares of stock the sum of $10 per share.

The bill then charges that the Commercial Lead Company, without any payment of money or property to it whatsoever, issued and delivered to the defendants named in the bill certain of the number of shares of said increased stock therein set out, for which they have not paid said corporation any money or property whatsoever, and that said stock is and always has been assessable and

unpaid to the defendant corporation to the amount of the par value thereof. The bill then in paragraph 7 alleges that, at the time of the issuance of said stock, all of said stock was issued as a bonus to each of the shareholders of said Commercial Lead Company, in pursuance of some arrangement made and entered into by said Lead Company and with each of said defendants, the particulars and circumstances of which are unknown to this complainant. It is further stated in this paragraph that complainant is informed and believes that some of said defendants, whose names complainant is not able to give, advanced and loaned to said Lead Company certain sums of money, and that he is informed and believes that said defendants who did make such loans and advancements to said company have not been paid said sums of money so loaned said company, and that on payment of said amounts due by them to said company for the unpaid stock issued to them, and to each of them, they would be entitled to share pro rata with complainant and others, creditors of said company, in the amount due and owing on said stock, on an accounting of said moneys paid and loaned to the said Commercial Lead Company and the amounts due on the said shares of stock.

The answers of the defendants, and each of them, are, as before stated, substantially the same. The answer of James Green, one of the defendants, states that the Commercial Lead Company was organized under the laws of the state of Missouri, with a capital stock of $60,000, divided into 6,000 shares, of the par value of $10 per share, and afterwards, to wit, on the 20th day of August, 1903, said Commercial Lead Company voted to increase the stock to $100,000, said increase to consist of 4,000 shares, of the par value of $10 per share, and denies that no part of the par value of said shares of stock, amounting to $40,-000, was paid by any of the stockholders of said company, either in money or in property, and denies that there is anything due to the Lead Company on said shares. The defendant then denies that the Commercial Lead Company, without any payment of money or property, issued and delivered to the defendant 375 shares of said increased capital stock, and denies that this defendant (James Green) did not pay to said company any money or transfer or convey any property to it in payment thereof.

The answer, in the seventh paragraph thereof, alleges that the defendant was not a subscriber for said 375 shares, or any other number of shares of said stock of said company, but says, in the eighth paragraph thereof, that the Commercial Lead Company caused to be issued and delivered to this defendant a certificate for 375 shares of said increased capital stock, but denies that he did not pay full value therefor. The answer then goes on to state that on the 20th day of August, 1903, at a meeting of the stockholders of the Commercial Lead Company the capital stock was increased from $60,000 to $100,000, and that thereupon continuous efforts were made by the officers and directors of said company to dispose of said increased stock for the purpose of raising money with which to prosecute the work and discharge the obligations of the Commercial Lead Company, but that said efforts were wholly fruitless; that the officers and directors of said Commercial Lead Company failed after such efforts, extending over a period from August 20, 1903, until December 1, 1903, in making any sale at any price of such increased capital stock, or any part thereof; that during said period from August 20, 1903, to December 1, 1903, the creditors of the Lead Company were pressing it for the payment of debts amounting to about $60,000, which included a debt then owed by the Lead Company to the complainant, amounting to $1,000; that on and after December 10, 1903, for the purpose of raising money with which to discharge the indebtedness of said company, and also of continuing its business, the directors, by resolution of date December 10, 1903, authorized the officers of the company to borrow in the aggregate sum of $75,000, with interest at 7 per cent. per annum, and further authorized the officers of said company for each dollar so borrowed to offer as a bonus 50 per cent. of the amount so borrowed in increased stock of said company; that in pursuance of such resolution said company by its officers and agents proposed to this defendant (James Green) that if he would lend said company $7,500 for one year, with interest at 7 per cent., evidenced by note of this company, the company would cause to be issued to him 375 shares, full paid, of said increased capital stock as part consideration for making said loan of $7,500; that this defendant accepted said proposition

and loaned said sum of $7,500 to said company about January 1, 1904, and received the note of said Commercial Lead Company, dated December 10, 1903, payable one year after date, with interest at 7 per cent. per annum, and 375 shares of the increased capital stock of said Commercial Lead Company, which said note is now wholly unpaid and held by this defendant. The answer further alleges that the $7,500 was loaned by him to said company, together with other moneys loaned in a similar way by others, and that said moneys were used by said company to relieve it from debts due by it to its creditors who were demanding payment; that among the said creditors so paid about that time was this complainant, who received from the said moneys so realized the sum of about $1,000 in payment of the debt to him then due.

The evidence in this case supports substantially the answers of the several defendants, and the question for consideration is whether, under the circumstances stated in the answers and supported by the evidence, the defendants are liable for this stock. It will be seen that this answer practically discloses what is claimed to be two defenses—the first being that the capital stock issued was full paid, and that therefore no liability attaches to the defendant who received it; and, second, that, if the stock was not full paid, each of these defendants has a claim against the company that may be properly set off against the claim for unpaid stock. This case was argued at length before the court, and extensive briefs were filed on both sides.

It is hardly necessary to enter into a discussion of all the questions raised by counsel for complainant in their brief. It is sufficient for the court to say that in its opinion either of these defenses set up and proved are sufficient to defeat the claims of the complainant. There seems to be but little dispute about the facts in the case. The questions of law arising upon these facts constitute the differences between counsel. As it appears to the court, not only the facts, but the law, is with the defendants.

A decree in favor of the defendants will be entered, dismissing the bill of complaint, at complainant's costs.