THOMS & BRENNEMAN et al. v. GOODMAN.

In re HAMILTON GAS & ELECTRIC CO.

(Circuit Court of Appeals, Sixth Circuit.   August 3, 1918.)

No. 3159.

1. BANKRUPTCY ⊙═455—APPEAL—MATTERS REVIEWABLE.

In a bankruptcy proceeding, where stockholders are contesting right to levy assessments against them, in which some were not formally made parties, Circuit Court of Appeals will nevertheless proceed to the merits, where both sides have assumed that the order of assessment was a final appealable order.

2. CORPORATIONS ⊙═544(2)—SUBSCRIPTIONS—LIABILITY OF STOCKHOLDERS.

Subscribed, but unpaid, capital stock of a corporation, becomes, upon its insolvency and the suspension of business, a trust fund for all creditors, and, even before insolvency, it so far has that inchoate character as to prevent it from being surrendered or given away by the corporation.

3. COURTS ⊙═372(1)—FEDERAL COURTS.

In the absence of any controlling state statute, a federal court is not justified in declining to adopt the general rules of corporate law, approved by the Supreme Court of the United States, unless there is a clear, definite, and settled rule to the contrary in the state.

4. CORPORATIONS ⊙═232(1)—LIABILITY OF STOCKHOLDERS—STATUTES.

Ohio Constitution and statutes, to the effect that a stockholder shall be liable for the amount unpaid upon his stock, do not prevent the application of the rule that persons buying necessarily issued additional stock of a corporation at its market value are not liable for the difference between the par value and the purchase price.

⊙═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. CORPORATIONS  ⟨⟨==⟩232(1)—LIABILITY OF STOCKHOLDERS.

Where an Ohio corporation, on account of impairment of its capital stock, necessarily issues additional stock, stockholders who purchase such stock below par at its market value will not be held liable to creditors or other stockholders for the difference.

Appeal from the District Court of the United States for the Western Division of the Southern District of Ohio; Howard C. Hollister, Judge.

In the matter of the Hamilton Gas & Electric Company, a corporation, bankrupt. From an order of the District Court, affirming an assessment against stockholders by the referee on petition of S. M. Goodman, trustee, Thoms & Brenneman and others appeal. Reversed and remanded.

In November, 1904, the Hamilton Gas & Electric Company was organized under the laws of Ohio, with an authorized capital stock of $1,000,000, and with an authorized bond issue of the same amount. More accurately speaking, this was a consolidation and reorganization of existing companies; but for all purposes now involved there is no distinction. Seven hundred thousand dollars of bonds and the same amount of stock were issued in payment for the various properties and enterprises which became the property of the corporation and for working capital, and the stock and bonds were considered fully paid by the transfer of these properties and by the cash paid in. For the purposes of this case, the full payment of this $700,000 of stock is unchallenged. The remaining $300,000 of bonds and the same amount of stock were issued at intervals over a period commencing November, 1905, and ending October, 1907, for the purpose of acquiring additional funds needed in the operation of the company, and after it had been in active operation from one to three years. Part of this capital was needed for the reconstruction of a plant destroyed by a tornado, and it is to be assumed, in the lack of present dispute, that it was all necessary to enable it to carry on its business. These 300 bonds, of $1,000 each, and each accompanied by the same amount of stock, were mostly sold for par. The sales were made to the directors or those active in the management of the corporation, many of whom had already advanced considerable sums by way of loan.

In December, 1911, the company became an involuntary bankrupt. Its indebtedness consisted of $1,000,000 of mortgage bonds, about $110,000 of loans and advances by or through the personal relations of directors and an amount of general indebtedness so trifling as to be negligible. The sale of the mortgaged property realized sufficient to pay $495 on each bond. For the deficiency of $505,000, some of the bondholders filed general claims. The assets not mortgaged seem to have been not large enough to make material change in the situation. Thereupon the trustee filed with the referee a petition, asking that he be authorized to make an assessment against the holders of the $300,000 of stock as if it had been subscribed for and remained wholly unpaid. In his petition, and a supplemental petition, he named the holders of this stock, as far as known, and eventually notice was given them, and they made a contest before the referee. Although there was no pleading before the referee in opposition to the petition, the matter seems to have been treated on both sides as if there had been formal appearance and issue. The referee found that, after excluding debts not entitled to share in such an assessment, there remained $86,000 of debts which should be paid in this manner, and which he accordingly assessed, pro rata, against the holders of this stock. Those who had been assessed to the amount of about $50,000 filed a petition for review. The District Judge affirmed the referee in the main, and ordered an assessment to the same general effect. Six of the parties named, and who were thus assessed for about $47,000, bring this appeal.

Robert Ramsey, of New York City, for appellants.

Slayback & Harr, of Hamilton, Ohio, and Ralph R. Caldwell, of Cincinnati, Ohio, for appellee.

Before KNAPPEN and DENISON, Circuit Judges, and WAL-TER EVANS, District Judge.

DENISON, Circuit Judge (after stating the facts as above). [1] We pass by any question whether an order, made as this was, when the persons to be assessed were not parties to the record in any formal way, is a final order subject to appeal. It has been so assumed upon both sides, and there is no such obvious lack of jurisdiction as should prevent us from proceeding to the merits. See Marin v. Augedahl, 247 U. S. 142, 38 Sup. Ct. 452, 62 L. Ed. 1038.

[2] The doctrine that the subscribed, but unpaid, capital stock of a corporation, becomes, upon its insolvency and suspension of business, a trust fund for all creditors, and that, even before insolvency, it so far has that inchoate character as to prevent it from being surrendered or given away by the corporation, finds universal acceptance. The underlying reasons for the rule and the persons by whom and the manner in which the resulting rights are to be enforced are not now and here important. No less well settled, as a matter of general corporate law and rule of equity, is the (seeming or possible) exception to the universality of the general rule, by which exception a corporation, the value of whose capital stock has become impaired, and which finds it necessary to sell additional capital stock, may sell the same at the real worth or market value thereof, in which case the purchaser does not incur the liability of a subscriber under the general rule. This was most explicitly declared in Handley v. Stutz, 139 U. S. 417, 11 Sup. Ct. 530, 35 L. Ed. 227, and the care with which the question was considered and decided is evidenced by the dissent of two judges, and by the simultaneous consideration and decision of analogous problems, with corresponding result. Clark v. Bever, 139 U. S. 96, 109, 11 Sup. Ct. 468, 35 L. Ed. 88; Fogg v. Blair, 139 U. S. 118, 126, 11 Sup. Ct. 476, 35 L. Ed. 104.[1] When the present case is viewed in the aspect which it must have on the record, there is not merely analogy, but identity, between its facts and the facts of Handley v. Stutz, so far as the latter related to the group of stockholders who bought bonds and stock to-

[1] The same rule has either been expressly adopted, or referred to with apparent approval, quite generally by federal and state courts, where there was no controlling statute. Grant v. East & West Co. (C. C. A. 5, Ala.) 54 Fed. 569, 575, 4 C. C. A. 511; Toledo Co. v. Continental Co. (C. C. A. 6, Ohio) 95 Fed. 497, 515, 36 C. C. A. 155; Ingraham v. Commercial Co. (C. C. A. 8, Mo.) 177 Fed. 341, 343, 101 C. C. A. 317; Granite Co. v. Titus (C. C. A. 5, S. C.) 226 Fed. 557, 570, 141 C. C. A. 313; Clark v. Johnson (C. C. A. 8, Ark.) 245 Fed. 442, 447, 157 C. C. A. 408; Stein v. Howard, 65 Cal. 616, 4 Pac. 662; Dummer v. Smedley, 110 Mich. 466, 476, 68 N. W. 260, 38 L. R. A. 490; Hospes v. Northwestern Co., 48 Minn. 174, 197, 50 N. W. 1117, 15 L. R. A. 470, 31 Am. St. Rep. 637; Woolfolk v. January, 131 Mo. 620, 634, 33 S. W. 432; Van Cott v. Van Brunt, 82 N. Y. 535; Speer v. Bordeleau, 20 Colo. App. 413, 421, 79 Pac. 332; McDowell v. Lindsay, 213 Pa. 591, 595, 63 Atl. 130; and see note in 8 L. R. A. (N. S.) 263, 265.

gether (139 U. S. 428, 11 Sup. Ct. 534 [35 L. Ed. 88]), and so far as concerns the form and manner of stock issue—not necessarily as to the justification for the discount. The Hamilton Company was a going concern; the circumstances indicate that its existing stock was worth less than par; it needed additional capital; it is at least probable that bonds could not be sold for par, in such amounts and so quickly as needed; and the case is plainly one where bonds and stock were sold together for a gross sum. It is not alleged that they were worth any more than was received.[2] There is no room for doubt that the petition and the proofs herein fail to make a case, unless Handley v. Stutz ought not to be followed; and the claim that it ought not to be followed rests upon the proposition that the law of Ohio is otherwise and that the Ohio law must control. Whatever might be true as to some of the matters argued (see Clark v. Bever, supra, 139 U. S. at page 117, 11 Sup. Ct. 468, 35 L. Ed. 88), it has been recently held in this court that, upon the underlying question of liability, the Ohio law must be ascertained and applied (Kiskadden v. Steinle [C. C. A. 6] 203 Fed. 375, 378, 121 C. C. A. 559; Courtney v. Croxton, 239 Fed. 247, 249, 152 C. C. A. 235).

[3, 4] Clearly, in the absence of any controlling Ohio statute, we can be justified in declining to adopt the general rules of corporate law approved by the Supreme Court of the United States only in case we find a clear, definite, and settled rule to the contrary in Ohio. The Ohio constitutional and statutory provisions referred to in the Ohio cases hereafter mentioned say only that the stockholder shall be liable for the amount unpaid upon his stock, and it was said, in Clark v. Bever, 139 U. S. 116, 11 Sup. Ct. 475, 35 L. Ed. 88:

"The recognition in the Iowa statute of the right of creditors of corporations to look to unpaid installments of stock subscriptions to obtain satisfaction of their demands did not confer a new right, but is a recognition of a right existing before the statute in virtue of the relations between a corporation and its creditors and stockholders."

Comparison of the Ohio with the Missouri statute, quoted in Fogg v. Blair, supra, 139 U. S. at page 125, 11 Sup. Ct. 476, 35 L. Ed. 104, shows at least as strong a case of statutory liability in Missouri as in Ohio, yet the Missouri statute does not prevent the full application of Handley v. Stutz in that jurisdiction. Ingraham v. Commercial Co. (C. C. A. 8) 177 Fed. 341, 343, 101 C. C. A. 317. Hence we must conclude that the Ohio statute furnishes no effective distinction.

[5] It cannot be said of the Ohio decisions that they establish any such clear and settled rule. Their distinct tendency is the other way. All cases of stock issue resolve themselves into two classes: First, those which are incidental to the organization of the corporation on the launching of its business. All persons who take this stock are the original and voluntary associates. As to this class, it may well be, as has often·been held, that the form adopted for their association is not controlling and that they may be treated as subscribers solely through the

---

[2] The proof is that the bonds, "as marketed," were worth what they brought, but they were "marketed" with the stock accompanying them; and this amounts to saying that they together were worth the price received.

effect of their acceptance of stock, issued as if on a subscription—provided that the acceptance of stock in good faith exchange for property at an agreed valuation or as incidental to a bond purchase does not by the local law bar further liability. The second class comprises those incidental to the raising of additional capital for a going concern. In many of these cases, the issue of stock is characteristically a compulsory sale of a corporate interest rather than a mere subscription or voluntary joinder in a new enterprise; and while the underlying principles in the two classes applicable to the issue—subscription or sale?—do not furnish entirely satisfactory distinctions, the practical difference is often convincing and controlling. The undoubted fact, known to all, is that the capital stock of a corporation which needs additional working capital is often, if not typically, impaired in value, and that when the capital stock is thus impaired in value it is wholly impossible to sell new stock at par, and the corporation, as a matter of practical necessity, must sell it for what it is worth, or else not sell it at all. The Supreme Court seems to have considered that such possible theoretical injury as might come to creditors through permitting sales of stock at less than par and without liability for the balance, in those cases where the stock could not be sold for par, was a lesser evil than compelling every corporation to wind up its business or reorganize, if it had sustained some losses and needed more invested capital. The decision in Handley v. Stutz rests essentially upon the classification above stated between original associates and those who buy at its real value treasury stock in a going concern. When we come to consider the Ohio decisions, it is clear that those pertaining to an original association, or cases of the first class, cannot be taken—no matter what general language they use—as laying down a rule for cases of the second class, so as to obliterate the distinction which the Supreme Court of the United States has drawn.

The Ohio decisions are said to begin with and rest upon Henry v. Vermillion Co., 17 Ohio, 187. This contains nothing now pertinent, save the rather casual statement that since the charter required stock subscriptions to be paid in cash, an agreement by one subscriber to pay in something other than cash would be invalid as a fraud upon the other stockholders. Noble v. Callender, 20 Ohio St. 199, 208, is to the same effect. When subscribing, the stockholder took a collateral agreement providing that the subscription was to be paid in land. Without any discussion, it was held that this could not be enforced to the prejudice of creditors or costockholders. In Rouse v. Bank, 46 Ohio St. 493, 22 N. E. 293, 5 L. R. A. 378, 15 Am. St. Rep. 644, the court first had occasion to discuss the general principle, upon which depend all the points now involved, that the capital stock of a corporation, upon insolvency, becomes a trust fund for the benefit of creditors; but the extent and character of the liability for—or as if for—unpaid subscriptions were in no way involved. Gates v. Tippecanoe Co., 57 Ohio St. 60, 48 N. E. 285, 63 Am. St. Rep. 705, is the first decision brought to our attention or which we have found in which payment, as upon a subscription, has been enforced against one who received stock purporting to be fully paid. It had to do with a transaction by which a corporation was launched and continued in business

with a stated paid-up capital of $75,000, of which, in truth and according to property values fixed by the court, only one-half had been paid. Such distinctions·as there may be between stock so originally issued at an inflated value and stock afterwards issued upon the basis of actual value at the time of issue were not involved and were not considered. Handley v. Stutz was not mentioned, though it is not to be doubted that some things said in the course of the opinion would apply as well to the latter as to the former class of stock issues. In Trust Co. v. Ford, 75 Ohio St. .322, 332, 79 N. E. 474, 8 L. R. A. (N. S.) 263, there is considerable discussion of the general rule; but it is expressly said that the decision did not reach a case where the stock was sold after commencing business and at its real value.

We find nothing else to support the claim that the Ohio rule is inconsistent with Handley v. Stutz; on the contrary, there are two decisions tending to support the opposite conclusion. In Peter v. Union Co., 56 Ohio St. 181, 46 N. E. 894, there had been capital stock issued at a discount after the corporation had been in business for some time and when it needed additional capital. Upon insolvency, a suit was brought to compel a holder of this discount stock to pay the difference between this purchase price and par. After an exhaustive and fully reported argument of counsel, in which Handley v. Stutz was cited, it was held that the liability did not exist. It is true that the court relied upon, as more or less controlling, the fact that the complaint was made by another stockholder rather than by a creditor, and it is true that this distinction has later been noted by the same court (Trust Co. v. Ford, supra, 75 Ohio St. at page 338, 79 N. E. 474, 8 L. R. A. [N. S.] 263); but, with all deference, we cannot see that this is a distinction in principle. The court expressly holds, in this Peter Case, 56 Ohio St. 197, 46 N. E. 894, that if these unpaid subscriptions are assets of the corporation, the other stockholders are entitled to have them paid in and turned over to the creditors before the statutory double liability of the other stockholders is enforced; and, as it was held in the Gates Case, at almost the same time, that these unpaid subscriptions are corporate assets, the decision in the Peter Case necessarily leads to the conclusion that, under the facts of that case, there was no liability, even for the direct benefit of creditors. The latest reference to the general subject by the Ohio Supreme Court is in Niles v. Olszak, 87 Ohio St. 229, 234, 100 N. E. 820, Ann. Cas. 1913E, 1020. The specific question involved was one of set-off, but the court discussed the controlling principles, and cited, with apparent approval, Clark v. Bever, supra, to the effect that where an additional stock issue was accepted at 20 cents on the dollar, when that was more than it was worth on the market, there was no liability for the remainder as upon a subscription. It clearly did not occur to the court that the Ohio rule was inconsistent with Clark v. Bever. When we remember that the Gates Case and the trustee's claims here are founded on the trust fund theory, and that the United States Supreme Court has consistently maintained and applied that theory, but has decided that it does not reach facts like those now assumed which, upon the present record must be considered to show a case like the Peter and not like the Gates Case, and, when we make this review of the Ohio decisions, we cannot escape concluding that

the rule of Handley v. Stutz, as to purchasers of stock and bonds, should be applied to Ohio corporations wherever the facts make it appropriate by showing a sale of stock based upon honest dealings and financial necessity. The present petition is based solely on the theory of a subscription for the full amount, upon which nothing has been paid; the facts do not fit that theory, and the proceeding, in its present form, must fail. Whatever liability, if any, there may be must depend upon allegation and proof that the capital stock was depleted through sales of bonds and stock at a price less than could be justified. If the trustee wishes to propound a case with this aspect, and is advised that the right of action therefor is in him, the present petition may be amended, and the question presented. We intimate no opinion as to the force of an order of assessment made against stockholders who have not joined issue, but who reserve their defense for that plenary suit which must eventually be brought. Kiskadden v. Steinle, supra, 203 Fed. at page 382, 121 C. C. A. 559.

Rickerson Co. v. Farrell Co., decided by this court in 75 Fed. 554, 23 C. C. A. 302, is not pertinent to the issue we have been discussing. In that case the stock issued to Fox was in connection with what was practically the launching of the business ("to begin the business for which it had been organized" [75 Fed. 558, 23 C. C. A. 306]), and the opinion distinctly shows that the case was classified under that part of the opinion in Handley v. Stutz which declares a liability as against original subscribers and differentiated from that part of the opinion which refers to a later issue of stock at its market value. Kiskadden v. Steinle, supra, likewise involved only a case of original organization and its accompanying stock issue. Altenberg v. Grant (C. C. A. 6) 85 Fed. 345, 29 C. C. A. 185, was not only of the same class on its facts, but depended on a statute which, as construed, forbade any sale at less than par.

The record suggests numerous questions that will arise, if further efforts are made to enforce a liability, upon the theory that these bonds and stocks were sold for less than their known and fair value. Upon that theory, is the right of action in the trustee, as for the recovery of a corporate asset, or in the creditors who are injured, as for a fraud? Is the actual value of the stock sold, or the good faith exercised in fixing a price, the controlling criterion? Whatever the rule as to ordinary commercial creditors, is there a presumption that one who buys a mortgage bond does so upon the faith of a supposed liability to pay the capital stock, if it has not been paid; and, if there is such presumption, is it merely prima facie, or is it so violent as to be conclusive? Are the customary and natural investigations made by or for one about to buy mortgage bonds in large amount likely to disclose the truth as to its capital stock, so as to raise any presumption of knowledge or of ignorance on that subject? Upon this theory, is the rule of set-off the same as upon the theory of a subscription? Upon the subject of estoppel as against a creditor who knew that the capital stock was issued as fully paid, is one who buys a mortgage bond in any better position than his vendor? Whatever the rule as to the second purchasers of subscribed stock or the original takers of additional stock later sold at a discount, are those who later purchase the latter class of stock,

supposing it to be full paid, liable if it is not? We think it would be premature to discuss these and other suggested questions, until the facts are more fully developed.

The order appealed from is reversed, and the case remanded for further proceedings in accordance herewith.